IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT P.,[1]

               Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

               Defendant.

Case No. 3:23-cv-00148-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Scott P. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of his applications for Child's Insurance Benefits ("CIB")

and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social

Security Act. *See* 42 U.S.C. §§ 401-434, 1381-1383f. The Court has jurisdiction pursuant to 42

U.S.C. §§ 405(g) and 1383(c), and the parties have consented to the jurisdiction of a magistrate

judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party and the non-governmental party's family members in this case.

Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in November 1990, making him four years old on September 24, 1995, his alleged disability onset date. (Tr. 15, 100.) Plaintiff is a high school graduate who completed some college coursework with accommodations and has no past relevant work. (*Id.* at 43-44, 59-60, 75-76, 89, 308, 345.) In his applications, Plaintiff alleges disability due to hyperacusis,

PAGE 2 – OPINION AND ORDER

misophonia, a neurodevelopmental disorder that impairs his processing speed and verbal memory, post-traumatic encephalopathy, dysgraphia, a generalized anxiety disorder, back pain, radiculopathy, temporomandibular joint disorder, and balance, gait, and grip issues.[2] (*Id.* at 101, 113-14, 129, 148, 344.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on August 23, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 15.) On July 28, 2021, Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held before an ALJ. (*Id.* at 54-99.) On September 24, 2021, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 15-45.) On September 13, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 3-8.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve]

---

[2] The Court notes that "[h]yperacusis and misophonia are forms of sound sensitivity." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-02885, 2021 WL 8533032, at *9 (N.D. Fla. Nov. 16, 2021). Specifically, "[h]yperacusis is a disorder of loudness perception where ordinary environmental sounds are perceived as unbearably loud and certain sounds evoke physical discomfort or pain[,] . . . [and] [m]isophonia is a disorder in which specific sounds or types of sounds trigger abnormally strong emotional reactions." *Id.* (citations omitted). Further, the Court notes that encephalopathy "mean[s] a disease of the brain, especially[] one involving alterations of brain structure,'" *Fortier v. Hartford Life & Accident Ins. Co.*, 916 F.3d 74, 77 n.3 (1st Cir. 2019) (simplified), and "[d]ysgraphia is defined as a 'neurological disorder characterized by writing disabilities.'" *Williams v. Comm'r of Soc. Sec.*, No. 16-cv-01459, 2017 WL 4541355, at *3 (6th Cir. Mar. 1, 2017) (citation omitted); *see also Maus v. Wappingers Cent. Sch. Dist.*, 688 F. Supp. 2d 282, 288 n.1 (S.D.N.Y. 2010) (explaining that "[d]ysgraphia is defined as impairment of the ability to write, usually caused by brain dysfunction or disease") (simplified).

months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential

process for determining whether an applicant is disabled within the meaning of the Social

Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the impairment meets or equals a listed

impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the

claimant can perform other work that exists in significant numbers in the national economy. *Id.*

at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v.*

*Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any

of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of

proof at step five, where the Commissioner must show the claimant can perform other work that

exists in significant numbers in the national economy, "taking into consideration the claimant's

residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If

the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d

at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is

disabled. (Tr. 15-45.) At step one, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since November 25, 2008, the day he "attained [the] age [of eighteen]." (*Id.* at

18) (bold omitted). At step two, the ALJ determined that (1) for purposes of his CIB claim,

Plaintiff suffers from the severe impairment of "a learning disorder described as

dysgraphia/impairment in written expression," and (2) for purposes of his SSI claim, Plaintiff

suffers from the severe impairments of "a lumbar spine condition, vestibular dysfunction, [a]

learning disorder described as processing speed and auditory-verbal memory impairment, generalized anxiety disorder, and headache/migraine." (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 20.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can stand and walk for up to four hours during an eight-hour workday, (2) Plaintiff can occasionally balance, stoop, kneel, crouch, crawl, and "climb ladders up to ten feet," (3) Plaintiff can never climb ropes and scaffolds, (4) Plaintiff "must avoid concentrated exposure to work hazards, such as dangerous moving machinery and unprotected heights," (5) Plaintiff can perform "work in moderate or quieter noise environments under normal ambient lighting conditions," (6) Plaintiff "can perform simple, routine tasks," (7) Plaintiff can have "occasional contact with the general public, coworkers, and supervisors," and (8) Plaintiff can "perform work involving occasional changes in the work routine and setting." (*Id.* at 26.) At step four, the ALJ concluded that Plaintiff has no past relevant work experience. (*Id.* at 43.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as an office helper, photocopy machine operator, and collator operator. (*Id.* at 44.)

## DISCUSSION

Plaintiff's primary argument on appeal is that the ALJ committed harmful error because he formulated an RFC (and thus posed a hypothetical to the VE) that failed adequately to account for all of Plaintiff's limitations. (Pl.'s Opening Br. at 1, 3, 19, ECF No. 12.) In support of this argument, Plaintiff asserts that the ALJ erred in various respects, including by failing to provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony, and failing

to provide legally sufficient reasons for disregarding portions of the opinion of Plaintiff's examining psychologist, Miriam Anderson, Ph.D. ("Dr. Anderson"). (*Id.* at 9-11, 13-15.) As explained below, the ALJ did not err in discounting Plaintiff's testimony or Dr. Anderson's opinion, but the ALJ did err in relying on the VE's testimony at the final step of the five-step process. Accordingly, the Court reverses the Commissioner's decision and remands for further proceedings.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 28, reflecting that the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's

symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ met that standard here.

Plaintiff initially argues that the ALJ did not satisfy the Ninth Circuit's specificity requirement because he did not "state specifically which symptom testimony [was] not credible and what facts in the record lead to that conclusion." (Pl.'s Opening Br. at 15) (simplified). Plaintiff adds that the ALJ's "analysis fell short of the necessary requirements," as he "made no evaluation of [Plaintiff's] specific testimony regarding significant social interaction deficits." (*Id.*)

The Court finds unpersuasive Plaintiff's threshold argument that the ALJ's analysis did not meet the Ninth Circuit's specificity requirement. Plaintiff is correct that Ninth Circuit case law "requires the ALJ to specifically identify the testimony from a claimant she or he finds not to be credible and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (simplified); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that general findings are insufficient because the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints," and concluding that the ALJ's findings were "insufficient to meet 'our requirements of specificity'") (simplified). That does not mean that an ALJ must "perform a line-by-line exegesis of the claimant's testimony," or "draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277. But Ninth Circuit precedent "plainly requires" that an ALJ do more than "offer[] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted).

///

///

PAGE 7 – OPINION AND ORDER

*Lambert* and cases applying *Lambert* are instructive as to the level of specificity that the

Ninth Circuit requires. In *Lambert*, the ALJ cited four high-level reasons for discounting the

claimant's testimony:

> First, [the claimant] had 'not generally received the type of medical treatment one
> would expect for a totally disabled individual.' Second, the 'record reflect[ed]
> significant gaps in [the claimant's] history of treatment and relatively infrequent
> trips to the doctor for the allegedly disabling symptoms.' Third, [the claimant's]
> 'use of medications does not suggest the presence of impairments which is more
> limiting than found in this decision.' And finally, 'medications have been
> relatively effective in controlling [the claimant's] symptoms.'

980 F.3d at 1270. The Ninth Circuit held that these four reasons were legally insufficient because

they did not identify what parts of the claimant's testimony were not credible and why, and the

ALJ's discussion was "brief" and equated to offering general, non-specific conclusions. *Id.* at

1277.

By contrast, in *Young v. Saul*, 845 F. App'x 518, 519 (9th Cir. 2021), the Ninth Circuit

rejected the claimant's "argument that, by failing expressly to mention [the claimant's] assertion

that his back pain created a need for him to take weeks off from work at a time, the ALJ thereby

overlooked that testimony and failed to give reasons to discount it." *Id.* The Ninth Circuit

explained that the "ALJ was not required to mention explicitly, in his ruling, each detail of [the

claimant's] testimony, such as the need to take off weeks at a time from work." *Id.* at 520 (citing

*Lambert*, 980 F.3d at 1277). The Ninth Circuit held that the ALJ did not err because he

"specifically cited [the claimant's] written statements and testimony as among the items he had

'carefully consider[ed],' and he gave specific reasons why he did not credit [the claimant's]

claims concerning the 'limiting effects' of [the claimant's] symptoms, including his 'back and

knee pain.'" *Id.* at 519-20. Those reasons included inconsistent objective medical evidence,

minimal treatment before the claimant's date last insured, which the ALJ found did not support

the claimant's "subjective complaints," and a non-examining physician's conflicting opinion. *Id.* at 520.

Similarly, in *Cooper v. Kijakazi*, No. 20-15935, 2022 WL 1553170, at *1 (9th Cir. May 17, 2022), "the ALJ summarized [the claimant's] relevant testimony concerning her key asserted limitations and stated that he found 'these statements of extremely limited physical capacity inconsistent with the overall record.'" *Id.* In holding that the ALJ satisfied the clear and convincing reasons standard, the Ninth Circuit explained that "in assessing [the claimant's] testimony, the ALJ properly concluded that the objective medical evidence did not support the degree of limitation that [the claimant] claimed," and that "[a]lthough [the claimant] would have preferred a more granular point-by-point refutation of her testimony, '[the Ninth Circuit's] cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits.'" *Id.* (quoting *Lambert*, 980 F.3d at 1277).

Like the ALJs in *Young* and *Cooper*, the ALJ's findings here satisfy the Ninth Circuit's specificity requirement.[3] After summarizing medical evidence relevant to Plaintiff's CIB and SSI claims (*see* Tr. at 28-33), the ALJ explained that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms . . . are inconsistent because they differ from

---

[3] Before making specific findings, the ALJ made use of the following boilerplate language often included in disability determinations: "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 28.) This language alone does not meet the Ninth Circuit's specificity requirements. *See Finney v. Kijakazi*, No. 22-15143, 2022 WL 17830000, at *1 n.1 (9th Cir. Dec. 21, 2022) ("The ALJ . . . made use of boilerplate language stating that [the plaintiff's] statements are 'not entirely consistent with the medical evidence and other evidence in the record.' This boilerplate explanation is insufficiently specific." (citing *Lambert*, 980 F.3d at 1277)). The ALJ, however, did not rely solely on this language and proceeded to give specific reasons for discounting Plaintiff's testimony.

the evidence of record." (*Id.* at 33.) The ALJ noted, by way of example, that Plaintiff's reported

activities conflicted with his allegations of difficulty moving and walking: "For example, despite

allegations of difficulty moving and walking, [Plaintiff] goes hiking. . . . He has played

basketball. . . . Treatment notes from June 2018 show he had been very active over the past

month. . . . He had done a great deal of traveling and hiking." (*Id.*, citing Tr. 662, 800, 860,

1552.)

On the same page of his decision, the ALJ explained that "[d]espite [his] alleged

symptoms" and "[d]espite pain," including "lower back pain," Plaintiff reported that he often

traveled with his girlfriend, "participate[d] in all activities of daily living," and sat "throughout

[an] entire car ride" to Bend, Oregon. (*Id.*, citing Tr. 713, 768, 1089, 1370, 1398-99, 1431, 1469;

*see also id.* at 24, "[Plaintiff] reported difficulty leaving his house because of anxiety. . . . The

record shows that he is able to overcome this difficulty. . . . He travels with his girlfriend often.";

*id.* at 27, noting that Plaintiff alleged an inability to work based, in part, on chronic back pain and

anxiety and testified that he has "engaged in substantial travel"). For these reasons and others,

the ALJ determined that the record evidence did not "fully support[]" Plaintiff's symptom

testimony, and thus "consider[ed] [Plaintiff's] testimony with caution." (*Id.* at 43.)

It is well settled that an ALJ may discount a claimant's symptom testimony based on

activities that are incompatible with the claimant's testimony regarding the severity of his

symptoms. *See Burrell*, 775 F.3d at 1137-38 (explaining that "[i]nconsistencies between a

claimant's testimony and the claimant's reported activities provide a valid reason for an adverse

credibility determination"); *Garrison*, 759 F.3d at 1016 (stating that a claimant's activities have

"bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the

claimant's] claimed limitations"). In other words, there must be a meaningful inconsistency

between the claimant's reported activities and symptom testimony. *See Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (holding that the ALJ committed harmful error in discounting the claimant's symptom testimony, and explaining that the claimant's "limited daily activities were not meaningfully inconsistent with her symptom testimony").

The following records, most of which the ALJ cited,[4] demonstrate that there was a meaningful inconsistency between Plaintiff's activities and the alleged severity of Plaintiff's symptoms:

- May 26, 2017: Plaintiff reported that he had been "riding motorcycles and playing basketball with a friend, which are things that he enjoys doing but [was not] allowing for a while." (Tr. at 860; *cf. id.* at 874, May 2, 2017, Plaintiff's provider noted that Plaintiff is "not even able to exercise and spends many hours every day lying in bed which is [his] most comfortable position," and that "[e]ven sitting for more than [ten to fifteen] minutes and especially standing triggers worsening midline low back pain").

- July 24, 2017: Plaintiff and Plaintiff's mother reported that Plaintiff graduated from high school in 2009 with a 2.276 grade point average, Plaintiff has "a number of friends with whom he enjoys spending time," and Plaintiff has "always been very social, and seem[ed] to be a leader among his friends." (*Id.* at 68, 308, 382-83; *see also id.* at 308, 403, 427, noting that Plaintiff graduated without attending or

---

[4] "The Court is not permitted to affirm the Commissioner on a ground upon which the Commissioner did not rely, but the Court is permitted to consider additional support for a ground on which the ALJ relied." *Fenton v. Colvin*, No. 6:14-cv-00350-SI, 2015 WL 3464072, at *1 (D. Or. June 1, 2015) (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006)).

receiving any special education, and earned grades of "A" in art, sculpture, and sacraments, "A-" in graphic design, computer applications, physical education II, peace and justice, and sculpture IA, "B+" in algebra I, sculpture, and introduction to Catholicism, "B" in academic skills and global studies, and "B-" in sociology and prayer).

- January 26, 2018: Plaintiff was "[p]lanning a trip to Las Vegas with [his] brother." (*Id.* at 820.)

- April 6, 2018: Plaintiff reported that he had "been able to be more active, attends social events now and has more friends," and Plaintiff's provider noted that Plaintiff "hurt his back some and had to take more oxycodone" when he was "[a]pparently . . . helping [somebody] move furniture[.]" (*Id.* at 1561-62.)

- May 3, 2018: Plaintiff reported that his "[p]revious level of function and limitations" included traveling and hiking. (*Id.* at 800.)

- May 4, 2018: Plaintiff "note[d] that he went to a tulip festival [the previous weekend] which involved lots of walking." (*Id.* at 595.)

- June 8, 2018: Plaintiff had "been very active over the last month" and "done a great deal of traveling and hiking." (*Id.* at 662, 1552; *cf. id.* at 588, 591, 596, 598, 601, 604, 610, 613, March 27, April 6, May 4, May 22, July 13, August 22, November 28, and December 19, 2018, noting that Plaintiff "does not exercise").

- July 9, 2018: Plaintiff reported "doing well," that he "travels a lot," and that he "stays very active." (*Id.* at 1550.)

- July 18, 2018: During physical therapy, Plaintiff reported "increased [right] lumbar pain after bowling [two] games" the previous day and that he was "overall doing fairly well." (*Id.* at 781; *cf. id.* at 65, noting that Plaintiff later testified that he was "in excruciating pain pretty much two hours after going bowling and then the next three days [he] just had to stay home and rest in [his] bed all day more or less").

- August 6, October 2, and October 30, 2018: Plaintiff reported that he was "feeling very well," continued to travel "a great deal," "tolerate[d] all activities," "participate[d] in all [activities of daily living]," and had "even more extensive travel planned." (*Id.* at 1539, 1541, 1548.)

- October 15, 2018: Plaintiff reported that he had been "traveling with [his] girlfriend," he was "trying to keep up with [his] girlfriend who is very active," and he was "[g]etting ear infections from air travel and altitude changes driving across mountain ranges." (*Id.* at 768.)

- October 17, 2018: Plaintiff protectively filed an application for CIB. (*Id.* at 15.)

- November 16, 2018: Plaintiff reported that he "often travels with [his] girlfriend who has significant family money and many residences." (*Id.* at 1722.)

- November 26, 2018: Plaintiff protectively filed an application for SSI. (*Id.* at 15.)

- November 27, 2018: Plaintiff reported that he had been managing his ongoing lumbar pain "fairly well" and had "done hikes up to [two] miles." (*Id.* at 765-66.)

- November 27, 2018: Plaintiff reported that he was "feeling well," he had been "very busy [and done a] great deal of traveling," and he was "able to tolerate all activities." (*Id.* at 1536-37.)

- December 19, 2018: Plaintiff reported that he was "recovering from recent travel to [the] east coast" where he had one "episode of semi acute lumbar pain after walking for several miles." (*Id.* at 757.)

- January 7, 2019: Plaintiff reported that he had been "feeling quite well," he had "a very busy schedule last month," he was "able to tolerate extensive traveling to the east coast," and he "[c]ontinue[d] to be fully functional." (*Id.* at 1062, 1534.)

- January 15, 2019: Plaintiff completed an adult function report and reported that his back pain impacts his "ability to walk, stand or sit for a certain amount of time," he cannot play basketball because he cannot run, he "usually go[es] to the mountains or beach about every six weeks to two months even if only for a day or two," he can lift forty pounds, he can stand for thirty minutes, he can sit for an hour and a half, and he can walk one mile before "need[ing] to rest at least [fifteen] minutes, [and] then can walk a bit more but not another mile." (*Id.* at 286-93.)

- February 1, 2019: Plaintiff reported that he had been "traveling a lot with [his] girlfriend and her family," he "[w]ent to New York, Boston and Las Vegas,"

he was "not experiencing as much anxiety when traveling in [a] private

plane," and he was not taking as much Xanax for "social functions." (*Id.* at

1089.)

- March 18, 2019: Plaintiff reported that "[l]ast summer he was traveling." (*Id.*

  at 1104.)

- May 1, 2019: Plaintiff's mother reported that Plaintiff would "be in California

  for the next month." (*Id.* at 1151.)

- June 24, 2019: Plaintiff reported that he had been "feeling well" and he was

  able to "travel extensively since the end of April" and "tolerate his activities

  well most of the time." (*Id.* at 1519.)

- June 24, 2019: Plaintiff reported that he had been "traveling a lot with [his]

  girlfriend and her family," he recently "[f]lew to Palm Desert and then drove

  back to Oregon from San Diego," he was "[m]ore comfortable with air travel

  and elevators," and he was "[n]ot experiencing as much anxiety when

  traveling in [a] private plane." (*Id.* at 1431.)

- July 22, 2019: Plaintiff reported "feeling very well" and he "continue[d] to

  travel a great deal and [was] able to tolerate most of his activities." (*Id.* at

  1516.)

- July 26, 2019: Plaintiff's physical therapist reported that Plaintiff had "been

  seen for only [three] visits with periods of extended travel between visits" and

  "[d]espite this, [Plaintiff] ha[d] made some improvements." (*Id.* at 1232-33.)

- September 16, 2019: Plaintiff reported that he had been "feeling well" and he was "[a]ble to complete all his travels which re[q]uired strenuous physical activities." (*Id.* at 1511.)

- September 25, 2019: Plaintiff reported that he "continue[d] to travel with [his] girlfriend and her family," he had an "[i]ncreased ability to tolerate elevators, planes, [and] people," he was "[n]ow able to stay [in a] hotel above the first floor," and he was taking less Xanax "for social functions." (*Id.* at 1398-99.)

- April 15, 2020: Plaintiff reported that he was "taking motorcycle lessons" and "staying in Bend with [his] girlfriend." (*Id.* at 1369-70; *see also id.* at 71, reflecting that Plaintiff testified that his motorcycle lessons were a "single class" for the Oregon motorcycle endorsement, which he passed with accommodations).

- July 9, 2020: Plaintiff reported that he was "active lifting weights [and] riding a recumbent bike." (*Id.* at 1989, 2008.)

- September 22, 2020: Plaintiff reported that he "lifts weights and uses a stationary cycle." (*Id.* at 1851, 1853-54.)

- October 26, 2020: Plaintiff reported that he was "[a]ble to participate in all activities of daily living" and "able to take a trip to Bend and . . . sit throughout the entire care ride." (*Id.* at 1469.)

- December 15, 2020: Plaintiff reported that his exercise consists of "[w]eights a couple of times per week." (*Id.* at 1292.)

- July 28, 2021: Plaintiff testified that he cannot work due to, among other things, his difficulty processing information, balance issues, fatigue, anxiety,

and lower back and leg pain; he is able to travel often on his girlfriend's father's private jet because he can "lie down," "stand up and stretch any time," and "go from the car directly into the plane"; he was only able to walk for sixty to ninety minutes at the tulip festival and for less time than his grandmother; he has attended events but did not "participate in the whole event"; his "pain medicine helps [him] do some of [his] activities"; his travel consists primarily of short visits to museums, infrequent, ten- to-fifteen-minute visits to restaurants, and "sit[ting] in the hot tub" and "float[ing] around in the pool" at his girlfriend's father's vacation homes. (*Id.* at 60, 62-66, 82-84.)

On this record, the Court finds that substantial evidence supports the ALJ's discounting of Plaintiff's testimony based on his reported activities. *See generally Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("[T]he threshold for [substantial] evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quoting *Biestek v. Berryhill*, 587 U.S. ---- , 139 S. Ct. 1148, 1154 (2019))). Although Plaintiff argues that the ALJ did not provide any specific or clear and convincing reason for discounting his testimony (*see* Pl.'s Opening Br. at 15), the ALJ's decision demonstrates otherwise. (*See, e.g.*, Tr. 33-35.)

It is also notable that Plaintiff does not specifically address or challenge the ALJ's reliance on his activities or specific findings, nor does Plaintiff explain why the ALJ's interpretation of the record was not rational. (*See, e.g.*, Pl.'s Opening Br. at 13-15.) Plaintiff appears to proceed on the assumption that the ALJ was required to provide a point-by-point

refutation of his testimony (*see* Pl.'s Opening Br. at 15, suggesting that the ALJ "ignored considerable portions" of Plaintiff's testimony), but that is not the case.[5] *See Cooper*, 2022 WL 1553170, at *1 ("Although [the plaintiff] would have preferred a more granular point-by-point refutation of her testimony, '[o]ur cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits.'") (citation omitted).

In the Court's view, the ALJ's conclusion that Plaintiff's activities are incompatible with his symptom testimony is rational and must be upheld. *See Vazquez v. Kijakazi*, No. 22-35642, 2023 WL 5453198, at *1 (9th Cir. Aug. 24, 2023) ("[The plaintiff] contends that the [ALJ's reliance on a] long list of activities is deceptive, as she does not perform all of them every day and she is able to perform them at her own pace. Nevertheless, the ALJ's alternative interpretation of [the plaintiff's] daily activities is at least equally rational, and the reasoning is legally sufficient." (citing *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020))); *Ford*, 950 F.3d at 1154 ("If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005))).

///

---

[5] Relatedly, Plaintiff argues that the ALJ failed adequately to address his "specific testimony regarding significant social interaction deficits." (Pl.'s Opening Br. at 15.) The record and ALJ's findings, however, support the conclusion that the ALJ appropriately formulated an RFC that limited Plaintiff to occasional contact with the general public, coworkers, *and* supervisors, i.e., "slightly greater . . . mental limits" than the state agency consultants identified. (*See* Tr. 26, 36-37, setting forth the RFC and related findings; *id.* at 125, 144, noting that the state agency consultants identified slightly less restrictive social limitations; *see also id.* at 22-24, reflecting that at steps two and three, the ALJ addressed the Paragraph B criteria, including "interacting with others," found only moderate limitations based, in part, on evidence regarding Plaintiff's social relationships and extensive travel, and stated that "[t]he record shows [that Plaintiff] is able to overcome []his [alleged] difficulty" with "leaving his house because of anxiety").

In addition to Plaintiff's activities, the ALJ also provided other specific, clear, and convincing reasons for discounting Plaintiff's testimony, which Plaintiff does not address or challenge. For example, the ALJ explained that Plaintiff testified that his severe "leg pain and back pain have been consistent since high school," but the ALJ found this testimony "not persuasive . . . because there [was] no medical evidence of record to support physical issues from 2008 to 2010, and then [Plaintiff] received no substantial treatment until 2017." (Tr. 35, referring to Tr. 88.) It was appropriate for the ALJ discount Plaintiff's testimony based, in part, on a lack of supporting medical evidence. *See Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (explaining that "an ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason" (citing *Burch*, 400 F.3d at 680)).

Additionally, the ALJ observed that Plaintiff's testimony—in particular, Plaintiff's testimony that during high school, he "arrive[d] at school by 7:00 a.m.," met with his math and chemistry teachers "every morning before school started," and spent "five hours on homework at night"—supported the ALJ's finding that Plaintiff could "work an eight-hour day" in an occupation with a Specific Vocational Preparation ("SVP") of two because such a job "would be less demanding than trying to get through 12-hour high school days," and "show[ed] [that Plaintiff was] able to persevere and maintain concentration, persistence, and pace." (Tr. 34, referring to Tr. 78.)

For these reasons, the Court finds that the ALJ satisfied the Ninth Circuit's specificity requirement, provided clear and convincing reasons for discounting Plaintiff's testimony, and did not commit harmful error. *Cf. Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discounting of the claimant's testimony because the ALJ "provided at least one clear

and convincing reason supported by substantial evidence" for doing so); *see also Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (noting that an error is harmless if the ALJ "provided at least one valid reason to discount [the] testimony") (citation omitted); *Johaningmeier v. Berryhill*, No. 3:16-cv-02027-AC, 2018 WL 385035, at *6 (D. Or. Jan. 11, 2018) (agreeing with the Commissioner that the ALJ did not commit harmful error in discounting the claimant's testimony because "the ALJ provided at least one other clear and convincing reason").

## II.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

As the Commissioner acknowledges (*see* Def.'s Br. at 12, ECF No. 14), the new regulations apply here because Plaintiff filed his applications after March 27, 2017. *See Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a claimant's Social Security case if] she filed her claim on or after March 27, 2017," and that the new regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons standard); *see also Petriz v. Kijakazi*, No. 22-35155, 2022 WL 17592191, at *1 (9th Cir. 2022) (explaining that "the standard under the new regulations . . . [did] not apply to [the claimant's] case because [he] filed his application for benefits before [March 27,] 2017" (citing *Woods*, 32 F.4th at 789)).

Under the new regulations, "'[t]he most important factors' that [an ALJ] considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)).[6] Supportability refers to "the extent

---

[6] The ALJ correctly applied the new regulations and the identical regulations applicable to SSI claims, which are codified at 20 C.F.R. § 416.920c. (*See* Tr. 26); *see also Reynolds v. Kijakazi*, No. 21-35672, 2022 WL 4095381, at *1 (9th Cir. Sept. 7, 2022) (applying the new regulations in evaluating claims for disability insurance benefits and SSI (citing 20 C.F.R.

to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence,'" *id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)), and consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [he] considered the supportability and consistency factors' in reaching [his] findings.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

The new regulations reflect that an ALJ is not required to make specific findings regarding a medical source's relationship with the claimant, i.e., "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's record." *Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(3)(i)-(v)). Nor is an ALJ required to make findings regarding specialization or "other factors that tend to support or contradict a medical opinion[, such as the medical source's] familiarity with the other evidence in the claim or . . . understanding of . . . disability program[] policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(4)-(5).

If, however, an ALJ finds that medical opinions "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [he] considered the . . . factors in paragraphs (c)(3) through (c)(5)," *id.*

---

§ 416.920c and *Woods*, 32 F.4th at 791-92)); *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *1 (9th Cir. Dec. 27, 2022) (noting that the new, parallel regulations for claims for disability insurance benefits and SSI are "codified at 20 C.F.R. [parts] 404 [and] 416," respectively (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017)))).

§ 416.920c(b)(3), i.e., the medical source's relationship with the claimant, specialization, and

facts that support or contradict the medical opinion. *Id.* § 416.920c(c)(3)-(5); *see also Woods*, 32

F.4th at 792 (making a similar observation regarding the factors in paragraphs (c)(3) through

(c)(5)).

　　　　A district court reviews the ALJ's evaluation of a medical opinion for substantial

evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision,

including the decision to discredit any medical opinion, must simply be supported by substantial

evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or

treating doctor's opinion as unsupported or inconsistent without providing an explanation

supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at

*1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's

evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at

789)).

### B.　　Analysis

#### 1.　　Dr. Anderson's Opinion

　　　　Plaintiff suggests that the ALJ failed to provide legally sufficient reasons for disregarding

portions of the opinion of his examining psychologist, Dr. Anderson. (*See* Pl.'s Opening Br. at 9-

11, 19 arguing that the ALJ "did not challenge" or "set forth [any] reason to dismiss" portions of

Dr. Anderson's opinion and "then overlooked" them in formulating the RFC and VE

hypothetical). The Court disagrees and finds that substantial evidence supports the ALJ's

explanation for discounting Dr. Anderson's opinion. *See Kitchen v. Kijakazi*, 82 F.4th 732, 740

(9th Cir. 2023) ("Under the revised regulations, an ALJ need only provide 'an explanation

supported by substantial evidence' [for discounting a physician's opinion]." (quoting *Woods*, 32

F.4th at 792)).

The ALJ discussed Dr. Anderson's opinions at length in his decision and provided several reasons for finding Dr. Anderson's opinions unpersuasive. (*See* Tr. 38-41.) For example, the ALJ noted that Dr. Anderson opined that Plaintiff is "unable to navigate his world without excessive prompting and support from those around him," Plaintiff's "[d]ay-to-day functioning requires him to have direction[s] and instructions written down for him," Plaintiff cannot work, and Plaintiff is not able to be "self-supportive, now or in the future." (*Id.* at 38, quoting Tr. 1244.) The ALJ explained that Dr. Anderson's opinion is "not persuasive" because it is "inconsistent with the record," and noted that Plaintiff's "activities support greater functioning." (*Id.*) The ALJ added that contrary to Dr. Anderson's opinion that Plaintiff "cannot function on his own," the record, which the ALJ previously "described in detail," demonstrated that Plaintiff was "independent in activities of daily living," "travel[ed] locally and across the country by car and plane," "completed high school," drove a car, and "earned [his] motorcycle endorsement." (*Id.*)

Furthermore, after making repeat and extensive findings about Plaintiff's activity level (i.e., the record reflects that Plaintiff performs various chores, drives, works on cars, travels, lifts weights, socializes, rides a motorcycle, played basketball with a friend, and went on frequent trips with his girlfriend), the ALJ explained that he "prefer[red] this evidence of [Plaintiff's] functioning and discount[ed] Dr. Anderson's [opinion]" that Plaintiff has extreme or marked limitations in terms of understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (*Id.* at 40; *cf. id.* at 381-88, 1142-44, 1243-44, describing Dr. Anderson's opinions in reports dated September 22, 2017, May 3, 2019, and November 9, 2020).

///

PAGE 23 – OPINION AND ORDER

The ALJ reasonably concluded that Dr. Anderson's opinions were inconsistent with Plaintiff's activity level. *See Stockdale v. Kijakazi*, No. 22-16626, 2023 WL 7675562, at *1 (9th Cir. Nov. 15, 2023) (noting that the "ALJ permissibly weighed the medical opinions in the record," the "ALJ reasonably concluded that [the] [c]laimant's reported activities of daily living were inconsistent with [the physician's] assessment," a "conflict between a physician's opinion and claimant's activity level is a legally sufficient reason for rejecting it," and the claimant cited "portions of the record showing that she struggled with certain tasks" but other records suggested otherwise (citing *Ford*, 950 F.3d at 1155)). Plaintiff does argue that the ALJ erred in discounting Dr. Anderson's opinions based on his activity level, or address the matter. (*See* Pl.'s Opening Br. at 10-11.)

The ALJ also provided other reasons for discounting Dr. Anderson's opinions, which Plaintiff does not address. For example, the ALJ noted that Dr. Anderson offered an opinion relevant to Plaintiff's CIB application (i.e., whether Plaintiff met or equaled a listing before the age of twenty-two) but acknowledged that she "did not evaluate [Plaintiff] until age [twenty-six]" and thus her opinion was based on "subjective reports." (Tr. 39, quoting Tr. 1143, which reflects that Dr. Anderson checked a box stating that in her opinion, Plaintiff met the listing for neurodevelopmental disorders before the age of twenty-two given, among other things, the extreme or marked limitations described above, and that Dr. Anderson noted that she did not evaluate Plaintiff until age twenty-six and her opinion was based on "parent and self-report").[7] The ALJ explained that Dr. Anderson's "reliance on unidentified subjective accounts [was] not persuasive." (*Id.*) The ALJ later added that the record does not support Dr. Anderson's "marked limits" and Dr. Anderson "speculate[d] based on parent and self-reports, even though she did not

---

[7] Plaintiff's and Plaintiff's mother's subjective reports are very similar and overlap in nearly all relevant respects. (*Compare* Tr. 382-83, *with* Tr. 23, 58-73, 75-88, 286-93, 359.)

examine [Plaintiff] until after age [twenty-six], . . . about [Plaintiff's] condition in 2010." (*Id.* at 41.)

It was reasonable for the ALJ to reject Dr. Anderson's opinion regarding Plaintiff's condition before the age of twenty-two because Dr. Anderson acknowledged that she did not evaluate Plaintiff until he was twenty-six and thus relied largely on Plaintiff's self-reports, which, as discussed, the ALJ properly rejected as inconsistent with Plaintiff's reported activities. *See Mitchell v. Kijakazi*, No. 21-35647, 2022 WL 17547806, at *1 (9th Cir. Dec. 9, 2022) (holding that "substantial evidence support[ed] the ALJ's decisions regarding the persuasiveness of various medical opinions," and noting that the "ALJ considered the extent to which the opinions were based on the unreliable subjective reports of [the plaintiff] and evaluated the opinions' consistency and supportability against other evidence in the record, including . . . [the plaintiff's] contrasting reported activities"); *see also Stephens v. Kijakazi*, No. 22-35998, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023) (noting that the ALJ appropriately discounted a psychologist's opinion because it was "supported only by [the plaintiff's] subjective complaints, which . . . the ALJ properly rejected as inconsistent with the record and [the claimant's] daily activities," and "[t]he ALJ reasonably explained that [psychologist's] severe limitations regarding [the plaintiff's] social functioning were unsupported by the level of [the plaintiff's] daily activities").

For all of these reasons, the Court finds that the ALJ provided legally sufficient reasons for discounting Dr. Anderson's opinion and that contrary to Plaintiff's argument (*see* Pl.'s Opening Br. at 9-11), the ALJ did not fail to account for Dr. Anderson's pace and processing limitations.

///

### 2.    The State Agency Psychological Consultants

Plaintiff also argues that the ALJ's RFC and VE hypothetical failed adequately to account for the state agency psychological consultants' opinions regarding, among other things, Plaintiff's ability to understand and remember instructions. (*See* Pl.'s Opening Br. at 5-9, arguing that the ALJ "inexplicably[] disregarded the [consultants'] instruction-based restrictions"). The Court agrees.

### a.    Plaintiff's Limitations

With respect to Plaintiff's understanding and memory limitations, the initial state agency psychological consultant, Winifred Ju, Ph.D. ("Dr. Ju"), determined that (1) Plaintiff was moderately limited in his ability to understand and remember detailed instructions, (2) Plaintiff could understand and remember "simple instructions," and (3) Plaintiff "would need reminders for remembering more complex instructions[.]" (Tr. 124, 126.) Similarly, the second state agency psychological consultant, Joshua Boyd, Psy.D. ("Dr. Boyd"), determined that (1) Plaintiff was moderately limited in his ability to understand and remember detailed instructions, (2) Plaintiff could understand and remember "short/simple/routine step instructions," and (3) Plaintiff was "incapable of understanding/remembering more complex instructions[.]" (*Id.* at 143-44, 162-63.)

With respect to Plaintiff's sustained concentration and persistence limitations, on the other hand, Dr. Ju determined that (1) Plaintiff was moderately limited in his ability to carry out detailed instructions, (2) Plaintiff could "carry out and maintain [concentration, persistence, and pace] for simple tasks," (3) Plaintiff "could occasionally carry out and maintain [concentration, persistence, and pace] for more complex tasks," and (4) Plaintiff "performs more effectively on tasks that can be completed individually [without] the need for coordinated efforts from coworkers." (*Id.* at 123.) Similarly, Dr. Boyd found that (1) Plaintiff was moderately limited in

his ability to carry out detailed instructions, (2) Plaintiff could "maintain/carry out simple/routine tasks," and (3) Plaintiff was "incapable of maintaining/carrying out more complex tasks[.]" (*Id.* at 143, 162.)

### b.    The ALJ's RFC and VE Hypothetical

In his decision, the ALJ found the state agency psychological consultants' opinions "generally persuasive," and seemed only to explicitly reject Drs. Ju and Boyd's opinions to the extent that they found that during the period relevant to Plaintiff's CIB claim, there was insufficient evidence to assess, among other things, Plaintiff's ability to understand, remember and apply information and concentrate, persist, or maintain pace. (*See* Tr. 36-37, reflecting that the ALJ found these opinions, which are located at "Exhibit 1A/9" and "Exhibit 6A/11," i.e., Tr. 108, 138, 157, unpersuasive because there was sufficient, CIB-relevant evidence in the record). Notably, the ALJ acknowledged and provided no reasons to discount Dr. Ju's opinion that Plaintiff is "capable of understanding and remembering simple instructions" and "would need reminders for remembering more complex instructions," and Dr. Boyd's opinion that Plaintiff can "understand and remember short, simple, and routine step instructions." (*Id.* at 36-37.) In fact, the ALJ suggested that with respect to Plaintiff's "mental limits," he formulated an RFC that was slightly "more restrictive than found necessary by the[] [s]tate agency doctors." (*Id.* at 37.)

Relevant to Drs. Ju and Boyd's opinions, the ALJ identified the following mental limits in the RFC and VE hypothetical: (1) Plaintiff "can perform simple, routine tasks," (2) Plaintiff can have "occasional contact with the general public, coworkers, and supervisors," and (3) Plaintiff can "perform work involving occasional changes in the work routine and setting." (*Id.* at 26; *cf. id.* at 89-92, 94-98, addressing the hypothetical; *id.* at 124-26, 142-44, 161-63, listing Drs. Ju and Boyd's opinions). Based on the VE's testimony, the ALJ found that Plaintiff could

perform three jobs (office helper, photocopy machine operator, and collator operator) with an SVP of two. (*Id.* at 44, 89-92.)

### c.    Disposition

The ALJ's RFC and VE hypothetical include no reference to Plaintiff's ability to understand and remember instructions. (*See id.* at 26, 89-92, 94-98.) Instead, the ALJ's RFC and VE hypothetical appear to address only Plaintiff's sustained concentration and persistence, social interaction, and adaption limitations. (*Compare id., with id.* at 124-26, *and id.* at 143-44, *and id.* at 162-63.) This is significant because the three jobs the ALJ identified as suitable for Plaintiff (office helper, photocopy machine operator, and collator operator) have a reasoning development level of two. *See* DICOT 208.685-010, 1991 WL 671753 (Jan. 1, 2016) (reflecting that a collator operator involves "Reasoning: Level 2"); DICOT 207.685-014, 1991 WL 671745 (Jan. 1, 2016) (stating that a photocopying machine operator requires "Reasoning: Level 2"); DICOT 239.567-010, 1991 WL 672232 (Jan. 1, 2016) (noting that an office helper requires "Reasoning: Level 2").[8]

The Dictionary of Occupational Titles ("DOT") "assigns each job a 'reasoning development' level, on a six-tiered scale of Level One (simplest) to Level Six (most complex)." *Leach v. Kijakazi¸* 70 F.4th 1251, 1256 (9th Cir. 2023) (citation omitted). The first two reasoning development levels are:

> LEVEL 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

---

[8] "'DICOT' is the name of the on-line database on Westlaw that contains all of the job descriptions that are found in the fourth edition of the Dictionary of Occupational Titles." *Krueger v. Astrue*, 337 F. App'x 758, 761 n.4 (10th Cir. 2009).

LEVEL 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*Id.* (simplified).

In *Leach*, the Ninth Circuit recently addressed the pertinent distinction between level-one and level-two reasoning jobs. In that case, the ALJ's RFC reflected that the claimant could perform "simple, routine tasks," follow "short, simple instructions," perform "work that need[ed] little or no judgment," perform "simple duties that [could] be learned on the job in a short period," and work in an "environment that [was] predictable and [involved] few work setting changes." *Id.* at 1254. By comparison, the ALJ's VE hypothetical reflected only that the claimant could "understand and remember and carry out simple job instructions, maintain attention and concentration, perform non-complex routine task[s], and . . . work in an environment with occasional changes to the work setting." *Id.* at 1254. Relying on the VE's testimony, the ALJ concluded that the claimant could perform three unskilled jobs with a reasoning level of two. *Id.* at 1254-56.

On appeal, the Ninth Circuit rejected the Commissioner's argument that "*all* jobs with reasoning level two are suitable for persons, like [the] [c]laimant, who [we]re limited to following short, simple instructions." *Id.* at 1256. In rejecting this argument, the Ninth Circuit emphasized the pertinent distinction between level-one and level-two jobs and that the ALJ failed accurately to summarize the claimant's limitations when he posed the hypothetical to the VE:

Most pertinently, level-one jobs require only 'simple one-or two-step instructions' but level-two jobs require 'detailed but uninvolved . . . instructions.' . . . Both reasoning levels require simple (or 'uninvolved') instructions. . . . The key distinction between those two levels is that level-one jobs require instructions involving at most two steps, whereas level-two jobs may require 'detailed'—that is, potentially longer—instructions. . . . A level-two job with 'detailed but uninvolved . . . instructions' could require an employee to follow *lengthy* simple

instructions. On the present record, then, we cannot determine whether the level-two jobs identified by the [VE] require only *short*, simple instructions.

In reaching this holding, we emphasize that we agree with the Commissioner that a limitation to 'short, simple instructions' does not necessarily restrict a claimant to level-one jobs. Level-one jobs encompass instructions that include, at most, two tasks. . . . But 'short, simple instructions' could comprise more than two tasks. Some level-two jobs—including potentially the jobs identified by the [VE] here—might be consistent with a limitation to following only short, simple instructions. For example, a particular level-two job might involve only three tasks that are simple to explain. Because the [VE] was not asked about a person limited to following short, simple instructions, however, we have no evidence on this point, and remand for further proceedings is required. . . .

Relatedly, we stress that we need not, and do not, reach the question whether remand would be required had the ALJ accurately summarized [the] [c]laimant's limitations and had the [VE] identified jobs with reasoning level two. Because some level-two jobs may be consistent with a limitation to short, simple instructions, there may not be an 'obvious' conflict between level-two jobs and that limitation. We do not reach that distinct question.

*Id.* at 1256-57 (simplified).

The Commissioner acknowledges that the ALJ found "persuasive" Drs. Ju and Boyd's opinions regarding, among other things, Plaintiff's ability to understand and remember "simple instructions" and "short/simple/routine step instructions." (Def.'s Br. at 10-11, citing Tr. 124-25, 143-44, 162-63.) The Commissioner maintains that the ALJ "reasonably translated [these opinions] into the RFC assessment," and contrary to Plaintiff's argument, "[t]here was no 'inexplicable' disregard" of Drs. Ju and Boyd's opinions on instructions. (*Id.*, quoting Pl.'s Opening Br. at 8.)

The Ninth Circuit's decision in *Leach* demonstrates that a remand for further proceedings is required. In *Leach*, the ALJ's RFC limited the claimant to "short, simple instructions," but the VE hypothetical "asked only whether jobs existed for a person who can carry out 'simple job instructions.'" *Id.* at 1256. The Ninth Circuit explained that "[t]he ALJ plainly omitted the adjective 'short,' thus inviting the [VE] to identify jobs that have longer-than-short, simple

instructions." *Id.* The Ninth Circuit in turn held that the ALJ "erred by relying on the [VE's] testimony." *Id.*

Similarly, the ALJ here found persuasive Drs. Ju and Boyd's opinions that Plaintiff can understand and remember "simple instructions" and "short/simple/routine step instructions." (Tr. 36-37; *see also id.* at 124, 143, 162, showing that Drs. Ju and Boyd also respectively opined that Plaintiff "would need reminders for remembering more complex instructions," and that Plaintiff was "incapable" of "understanding/remember[ing] more complex instructions"). The ALJ's RFC and VE hypothetical, however, omitted any reference to Plaintiff's ability to understand and remember instructions and focused only on Plaintiff's ability to perform "simple, routine tasks," work "involving occasional changes in the work routine and setting," and work involving only occasional contact with the general public, coworkers, and supervisors. (*Id.* at 26, 89.) Despite this omission from the RFC and VE hypothetical, the ALJ relied on the VE's testimony and found that Plaintiff was not disabled because he could perform three unskilled jobs (office helper, photocopy machine operator, and collator operator) with a reasoning level of two.[9] (*Id.* at 44, 89-92.)

As discussed, the Ninth Circuit's decision in *Leach*, which also involved unskilled jobs, reflects that "[a] level-two [reasoning] job with 'detailed but uninvolved . . . instructions' could require an employee to follow *lengthy* simple instructions." *Id.* at 1254, 1256. As in *Leach*, the ALJ did not ask the VE about a person limited to following short and simple or short, simple, and routine instructions. Thus, the Court has no evidence on this point and must remand for further proceedings. *See id.* at 1257 ("Some level-two jobs—including potentially the jobs

---

[9] As the ALJ and VE observed, the office helper, photocopy machine operator, and collator operator jobs at issue have an SVP of two. (*See* Tr. 44, 91-92.) An SVP of two "corresponds to unskilled work." *McGarrah v. Colvin*, 650 F. App'x 480, 481 (9th Cir. 2016) (simplified).

identified by the [VE] here—might be consistent with a limitation to following only short, simple instructions. For example, a particular level-two job might involve only three tasks that are simple to explain. Because the [VE] was not asked about a person limited to following short, simple instructions, however, we have no evidence on this point, and remand for further proceedings is required.").

For these reasons, the ALJ committed harmful error in relying on the VE's testimony because the RFC and VE hypothetical failed adequately to account for Drs. Ju and Boyd's opinions regarding Plaintiff's ability to understand and remember instructions.[10] *See id.* ("We hold only that, because the ALJ omitted the qualifying adjective 'short' when posing the question to the [VE], thereby describing a hypothetical person with greater functional capacity than [the] [c]laimant possesses, the ALJ erred by relying on the [VE's] testimony, and the error was not harmless.").

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 3rd day of January, 2024.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[10] Given that remand is required, the Court does not address the parties' remaining arguments.